UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT MARTINEZ, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>ANDREW M. SAUL, Commissioner of )<br>the Social Security Administration, )<br>    Defendant. ) | CAUSE NO.: 2:19-CV-460- JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Robert Martinez on December 3, 2019, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed April 7, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 19, 2020, the Commissioner filed a response, and on June 1, 2020, Plaintiff filed a reply.

**I.    Background**

In July 2013, Plaintiff filed an application for benefits alleging disability beginning August 1, 2010. Plaintiff's application was denied initially and upon reconsideration. After a hearing and unfavorable decision, on September 12, 2018, this Court remanded his case for further proceedings. On July 11, 2019, Administrative Law Judge ("ALJ") Karen Sayon held a video hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On August 8, 2019, Administrative Law Judge ("ALJ") Karen Sayon issued a second decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant last met the insured status requirements of the Social Security

1

        Act on December 31, 2014.

2.     The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 1, 2010 through his date last insured of December 31, 2014.

3.     Through the date last insured, the claimant had the following severe impairments: coronary artery disease, hypertension, bipolar disorder, major depressive disorder, small intestine cancer, hearing loss, mild lumbar degenerative disc disease, right carpal tunnel syndrome, and obesity.

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     The claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; frequent but not constant fingering with the dominant right upper extremity; no concentrated exposure to extreme cold or hazards (defined as work at unprotected heights), or noise (such that work can only be performed in an environment with noise intensity level of 1, 2, or 3, as defined in the Dictionary of Occupational Titles (DOT)). The work should involve simple instructions and routine tasks; occasional changes in the workplace setting; simple decision-making; occasional interaction with supervisors and coworkers, and no public interaction, and no fast-paced production requirements.

6.     Through the date last insured, the claimant was not capable of performing past relevant work.

7.     The claimant was an individual closely approaching advanced age on the date last insured.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not he has transferable job skills.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that

>    existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, from the alleged onset date of August 1, 2010, through December 31, 2014, the date last insured.

The Appeals Council did not assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.    Analysis**

Plaintiff argues that the ALJ erred in failing to adequately consider the combination of Plaintiff's impairments and erred in the analysis of his fatigue, his hearing loss, and his age category. The Commissioner argues that the opinion is supported by substantial evidence.

Plaintiff argues that the ALJ erred in his analysis of Plaintiff's hearing loss. In the previous opinion remanding Plaintiff's case, the ALJ was "directed to identify the medical evidence that supports his contentions about the level of noise in Plaintiff's workplace." However, the ALJ merely stated that Plaintiff has previously been able to work despite his hearing loss and summarized his test results, along with Plaintiff's ability to interact with the ALJ at the hearing, then concluded that limiting Plaintiff "to environments with noise levels of 1, 2, and 3 as well as no public interaction and occasional interaction with coworkers adequately accommodates this [hearing loss]." Despite being directed to by the Court, the ALJ did not point to any medical expert who opined as to the level of noise Plaintiff could tolerate at work, and did not explain how the hearing test or other evidence translated to the DOT noise levels. He also did not acknowledge the difference between communicating one-on-one with the ALJ for a limited amount of time in a quiet setting with the noise and distraction of a typical workplace for an entire workday. The ALJ repeatedly referenced the usefulness of Plaintiff's hearing aids when he had them, although did not point to any medical evidence or expert opinion that the aids completely corrected his hearing difficulties irrespective of background noise or that the noise levels in the RFC would be sufficient to account for any ongoing difficulties.

To the extent that the ALJ was suggesting that because Plaintiff previously had a job while using hearing aids, she is reminded that "even persons who are disabled sometimes cope with their

5

impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012). In addition, the ALJ failed to address how Plaintiff's hearing impairments could interact with his other impairments to affect his ability to work. For example, the ALJ noted Plaintiff's moderate limitations with concentration, persistence, and pace, and mild limitation in understanding, remembering, or applying information, but did not address how his hearing difficulties could exacerbate these other limitations. The ALJ failed to follow the Court's directive to identify the medical evidence that supports the conclusions about workplace noise level and leaves the Court unable to trace the logic from the evidence to her conclusion.

The failure to consider how Plaintiff's hearing loss interacts with his other impairments is part of a broader failure of the ALJ to consider the combination of Plaintiff's impairments. The ALJ was required to "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling.").

In particular, the ALJ is required to "consider the limiting effects of obesity when assessing a person's RFC," analyzing whether "the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, *3-4 (May 20, 2019). In this case, the ALJ mentioned Plaintiff's obesity and stated that "there is no medical evidence indicating that it, alone or in combination with other medically determinable impairments, supports any listing level impairment," and that she considered the obesity "in reducing claimant to light work with occasional postural limitations,"

but did not but did not explicitly address how his obesity might exacerbate his other impairments, such as his back pain and lumbar degeneration or carpal tunnel syndrome. "SSR 19-2p explains obesity can exacerbate limitations in sitting, standing, walking, lifting, kneeling, and crouching. It also describes increased stress on weight-bearing joints." *Janet F. v. Saul*, No. 4:19CV61, 2020 WL 1443783, at *8 (N.D. Ind. Mar. 23, 2020) (citing SSR 19-2p).

Plaintiff also points out that the combination of his impairments is likely to cause problems at work due to absenteeism and time off task. In addition to his obesity, arthritis, and hearing loss discussed above, Plaintiff suffers from bouts of diarrhea and nausea, in addition to mental conditions, including anxiety, racing thoughts, and crying spells. The VE testified that someone off-task for 10% of the workday or absent more than seven days per year would not be able to maintain competitive employment. Plaintiff argues that the combination of Plaintiff's impairments is likely to exceed that threshold, but that the ALJ did not address it. Instead, the ALJ addressed Plaintiff's impairments individually, and discounted a number of them.

The ALJ noted Plaintiff's repeated reports of abdominal pain and diarrhea, including reports of needing to use the bathroom multiple times an hour during flares. However, immediately after noting his hospitalization for severe bowel instructions and surgery on a small bowel tumor in 2012, concluded that "[t]here just is not much to support his allegations" of diarrhea flares. She did not discuss the possibility of frequent absenteeism due to medical visits, despite the fact in the span of a few months in 2012 – in the middle of the relevant time-period for determining disability in this case – Plaintiff was hospitalized for 26 days. She also failed to address the impact of Plaintiff's anxiety and depression on his ability to stay on task.

7

The ALJ is required to consider a claimant's own statements about symptoms and how they affect his daily life and ability to work and to "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence" and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 SSR LEXIS 4, *15, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; 20 C.F.R. § 404.1529(a). The ALJ discounted Plaintiff's reports of diarrhea flares, despite his hospitalization and surgery on his bowel. The ALJ also found that Plaintiff's reports of fatigue were inconsistent with his activities, particularly his ability to take the long train rides necessary to get to his methadone treatment, and the fact that he was able to pace several miles over a few days while he was in the middle of a mental health crisis. The ALJ did not explain how the necessity of seeking treatment or the symptoms of mental health struggles, leading to an increase in activity a few times, meant that the repeated reports of struggles with fatigue and limited activity on a day-to-day basis should be ignored.

The Seventh Circuit Court of Appeals has warned against this type of "cherry-picking" of evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Instead, "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011).

The Court cannot conclude that the ALJ'S decision is consistent with the evidence or determine how the symptoms were evaluated. SSR 16-3p, 2017 WL 5180304 at *9. In addition, as Plaintiff argues, the ALJ has not adequately considered how the combination of Plaintiff's

8

impairments affect his ability to stay on-task for 90% of the workday and limit absences to an acceptable level. Rather than adequately analyze the combination of Plaintiff's numerous impairments, the ALJ considered each of Plaintiff's complaints individually, and did not consider all of them adequately. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("[T]he ALJ considered each category of Thomas's impairments seriatim, finding that no single category would prevent Thomas from doing the slightly-restricted light work indicated in the final RFC. . . . . Without any evidence that the ALJ considered Thomas's impairments in concert, we cannot say that the ALJ built the required accurate and logical bridge between the evidence and her conclusion.") (internal quotation omitted). The case must be remanded for adequate analysis of Plaintiff's numerous physical and mental impairments, individually and in combination.

**IV.  Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 1st day of March, 2021.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:  All counsel of record